UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TASHA L. SMITH,

            Plaintiff,          CIVIL ACTION NO. 13-10862
                                  DISTRICT JUDGE LAWRENCE P. ZATKOFF
      v.                    MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 10, 14)**

Plaintiff Tasha L. Smith challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application.  Cross motions for summary judgment are pending (Dkt. Nos. 10, 14).  Plaintiff also responded to the Commissioner's motion (Dkt. No. 16).  Judge Lawrence P. Zatkoff referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

## I.    RECOMMENDATION

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

## II.    DISCUSSION

### A.    *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability."  *See Colvin*

-1-

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    *Standard of Review***

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.  REPORT

### A.  *Administrative Proceedings*

Plaintiff applied for supplemental security income on January 6, 2011, alleging she became disabled on July 3, 2010 (Tr. 13, 76).  After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ Peter N. Dowd, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 23-33).  Plaintiff requested an Appeals Council review (Tr. 17-18).  On February 5, 2013, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

### B.  *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her application date in January of 2011 (Tr. 25).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: "(1) degenerative disc disease of the spine[1] and fibromyalgia;[2] (2) headaches; (3) sleep apnea; (4) anxiety disorder with panic attacks; and (5) bipolar disorder with . . . symptoms of depression and with [a] history of substance abuse" (Tr. 25).

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 28).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> a range of light exertional work activities . . . . In a potential work setting [Plaintiff] needs the occasional option to sit or stand. [Plaintiff] can do only occasional climbing of stairs, balancing, stooping, kneeling, crouching and crawling. [Plaintiff] must avoid hazards such as unprotected heights or moving industrial machinery. [Plaintiff] is also mentally restricted to simple, routine and repetitive work activities in a stable work environment. [Plaintiff] can mentally tolerate only superficial contact[] with supervisors and co-workers, but should not, or could not, work with the general public.

(Tr. 29).

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a waitress or exotic dancer (Tr. 31).

At step five, the ALJ found Plaintiff was not disabled, because there are a significant number of jobs available in the national economy that Plaintiff could perform, such as general office clerk, bench assembler, machine operator, or stock clerk (Tr. 32).

### C.    *Administrative Record*

---

[1]"Degenerative disc disease is not really a disease but a term used to describe the normal changes of the discs in the spine as a person ages. The breakdown of the discs can result in back or neck pain, as well as osteoarthritis, herniated disc, or spinal stenosis." *See* http://www.webmd.com/hw-popup/degenerative-disc-disease (last visited October 21, 2013).

[2]Fibromyalgia is pain and stiffness in the muscles and joints. *See Dorland's Illustrated Medical Dictionary*, 711 (31st Ed. 2007).

### 1.    Plaintiff's Hearing Testimony and Statements[3]

On her administrative hearing date, Plaintiff was a 29 year old mother who was separated from her husband.[4]  She did not graduate from high school but earned a GED (Tr. 50-51).

Plaintiff worked as a dancer at a stip club before becoming a waitress (Tr. 53-54).  When she lost her waitress job, Plaintiff became addicted to Ecstasy[5] and lost custody of her daughter (Tr. 52-53, 57).

Plaintiff has fibromyalgia; anxiety; daily panic attacks, crying spells, and migraine headaches; trouble sleeping; "unbearable" pain from her toes to her neck; trouble hearing out of her left ear; dizzy spells; mood swings; irritability; twitching; breathing problems; and, trouble paying attention and concentrating (Tr. 56, 60, 64-69).  Plaintiff uses a sleep apnea mask, but it does not help her sleep (Tr. 68).  She also takes Prozac (for panic disorder), Klonopin (for panic disorder and anxiety), Tramadol (for pain), Depakote (for migraines), Fioricet (for tension headaches), and Benadryl (for irritable bowel syndrome) (Tr. 59).  Plaintiff suffers from multiple side effects of her medications, including nausea (Tr. 65).

Plaintiff cannot cook, clean, wash clothes, do yard work, go grocery shopping, go out in public, or use public transportation; she spends the majority of the day lying in bed (Tr. 61, 65, 67).  Plaintiff can only walk a block and, on a bad day, she can only stand for 15 minutes (Tr. 64-65).  She has trouble sitting for long periods of time (Tr. 65).

---

[3]Plaintiff's testimony before the ALJ reflects her subjective view of her work history, medical condition, abilities and limitations.  It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

[4]Plaintiff never lived with her husband; he was incarcerated on the administrative hearing date (Tr. 51-52).

[5]According to www.drugabuse.gov, Ecstasy is a synthetic, psychoactive drug with amphetamine-like and hallucinogenic properties.

2.      **Relevant Medical Evidence**

In January of 2011, Plaintiff was diagnosed with joint pain and tremors (Tr. 213, 215).

On March 1, 2011, Plaintiff visited Nael M. Tarakji, M.D., for an evaluation.  Dr. Tarakji found Plaintiff had diffuse pain associated with headache, cognitive dysfunction, and tremors in her upper and lower extremities (Tr. 234).  He diagnosed Plaintiff with fibromyalgia, nonvascular headache, and anxiety-related symptoms (Tr. 234); her EEG was normal (Tr. 236).

In April of 2011, Plaintiff complained of persistent pain that was not relieved by her medications (Tr. 277, 326).  Plaintiff was diagnosed with fibromyalgia, but it was noted that she did not give her medications a chance to work, and Plaintiff's doctor questioned whether she exhibited drug-seeking behavior (Tr. 278).

On April 29, 2011, Plaintiff visited Rama D. Rao, M.D., for severe body pain (Tr. 262). Dr. Rao found Plaintiff had persistent severe lower back pain with radicular pain,[6] lumbar degenerative disc disease, bilateral sacroiliitis/L5 radicular pain,[7] fibromyalgia, myofascial pain,[8] cervical neck pain with radicular pain, and cervical degenerative disc disease (Tr. 263).

---

[6]"Radicular pain is caused by irritation of the sensory root or dorsal root ganglion of a spinal nerve.  The irritation causes ectopic nerve impulses perceived as pain in the distribution of the axon.  The pathophysiology is more than just mass effect: it is a combination of compression sensitising the nerve root to mechanical stimulation, stretching, and a chemically medicated noncellular inflammatory reaction."  *See* http://www.ncbi.nlm.nih.gov/pubmed/15253601 (last visited October 22, 2013).

[7]Sacroiliitis is an inflammation of one or both of [the] sacroiliac joints[.]" *See* http://www.mayoclinic.com/health/sacroiliitis/DS00726 (last visited October 21, 2013).

[8]"Myofascial pain syndrome is a chronic pain disorder.  In myofascial pain syndrome, pressure on sensitive points in [the] muscles (trigger points) causes pain in seemingly unrelated parts of [the] body.  This is called referred pain."  *See* http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042 (last visited October 22, 2013).

On May 5, 2011, Plaintiff reported that her pain had improved with treatment (Tr. 325) but 11 days later, she complained of unbearable pain throughout her entire body (Tr. 275). She was again diagnosed with fibromyalgia (Tr. 276). At the time, it was noted that Plaintiff had thrown her Lyrica (for fibromyalgia) samples away. She had also failed to follow her doctor's pain management course, and she was prescribed several different medications that she did not take. When Plaintiff's doctor denied her request for narcotics and a marijuana card, she said she would find a "different neurologist [because] he won't give me pain pills"; Plaintiff showed signs of drug-seeking behavior: she was described as being "all over the place trying to get pain meds" (Tr. 275-276).

A June 17, 2011 CT scan of Plaintiff's lumbar spine revealed: (1) incomplete fusion of the posterior elements of the T12 and L1 vertebral bodies thought to be related to a developmental variant; (2) no acute fracture, dislocation, or focal destructive process involving the lumbar spine; and, (3) no evidence of disc herniation, spinal stenosis or neural foraminal stenosis (Tr. 241).

On June 27, 2011, Plaintiff reported to Dr. Rao that her pain had decreased significantly after the sacroiliac joint injections. Dr. Rao found Plaintiff still had lower back pain with radicular pain, lumbar degenerative disc disease, and bilateral sacroiliitis/L5 radicular pain (Tr. 261).

### 3.      Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and vocational experience who: could lift a maximum of 20 pounds; stand, sit, and walk for at least six hours in an eight-hour workday; needed to alternate between sitting and standing; and, could occasionally climb stairs, balance objects while standing and walking, stoop, kneel, crouch, and crawl. The individual would need to avoid unprotected

heights and moving industrial machinery.  Finally, the individual could only: perform simple, routine, and repetitive work activities in a stable work environment; tolerate superficial contact with supervisors and co-workers; and, could not work with the general public (Tr. 71).  The VE testified that such an individual could perform work as a general office clerk, stock clerk, bench assembler, or machine operator (Tr. 72).  But, the individual would be precluded from work, if she would be absent more than one day a week due to migraine headaches, fibromyalgia, body pain, and panic attacks (Tr. 72).

### D.    *Plaintiff's Claims of Error*[9]

#### 1.    **Credibility Determination**

Plaintiff argues that the ALJ should have found that her testimony was credible regarding her limited ability to stand, walk, and sit due to fibromyalgia.

The Sixth Circuit has recently instructed ALJs on how to assess a claimant's credibility:

Credibility determinations regarding the applicant's subjective complaints of pain rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence.  In assessing an individual's credibility, the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged . . . .  Next, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to

---

[9]Plaintiff attempts to argue that the ALJ failed to articulate the weight he gave to medical sources, but she fails to identify the medical sources or the evidence she is referring to. Accordingly, this Magistrate Judge deems this argument waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").  In addition, Plaintiff attempts to argue in her response that the file does not contain a physical or mental RFC, but this Magistrate Judge declines to consider issues not raised in Plaintiff's opening brief.  *See United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004).

> alleviate pain or other symptoms; (5) treatment, other than medication, received
> for relief of pain or other symptoms; (6) any measures used to relieve pain or
> other symptoms; and (7) other factors concerning functional limitations and
> restrictions.

*Johnson v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2013 WL 5613535, at *8 (6th Cir. Oct. 15,

2013) (internal citations and quotations omitted).  The ALJ does not need to address *every* factor;

he only has to identify specific reasons for his credibility determination – supported by evidence

in the record – and clearly state the weight he gave to Plaintiff's statements and the reasons for

that weight. *Potter v. Colvin*, No. 3:12-CV-202, 2013 WL 4857731, at *13 (E.D. Tenn. Sept. 11,

2013) (citing SSR 96-7p, 1996 WL 374186, at *2 (1996); *Tell v. Comm'r of Soc. Sec.*, No. 11-

15071, 2012 WL 3679138, at *11 (E.D. Mich. July 13, 2012)).

     Here, the ALJ based his finding that Plaintiff's symptoms were "exaggerated" on the

medical evidence.  For example, Plaintiff's EMG, EEG, visual pattern reversal evoked response

study, and brainstem auditory evoked response study were normal (Tr. 26); Plaintiff's pain

decreased with epidural steroid injections (Tr. 27); and, she did not attend pain management (Tr.

27).  The ALJ also noted that Plaintiff did not give her medications a chance to work, she threw

away her fibromyalgia medication, and she exhibited drug-seeking behavior (Tr. 26-27).

     While Plaintiff undoubtedly suffered from fibromyalgia, the ALJ reasonably found that it

was not disabling.  "[F]ibromyalgia is an unusual impairment in that its symptoms are often not

supportable by objective medical evidence," but "a diagnosis of fibromyalgia does not

automatically entitle [plaintiff] to disability benefits[.]" *Vance v. Comm'r of Soc. Sec.*, 260 F.

App'x 801, 806 (6th Cir. 2008); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)

("[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from

working . . . but most do not and the question is whether [plaintiff] is one of the minority").

Moreover, SSR 96-7p allows the ALJ to consider the fact that Plaintiff did not follow the prescribed treatment: "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure," and a review of the medical evidence shows Plaintiff's pain improved when she took her medications or followed the prescribed treatment. *See Warford v. Bowen*, 875 F.2d 671, 673 (8th Cir. 1989) ("[a] medical condition that can be controlled by treatment is not disabling").  In addition, the fact that Plaintiff exhibited drug-seeking behavior weighs against her credibility.  *Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) ("there is sufficient evidence in the record to support the ALJ's determination that [plaintiff's] credibility about her pain and limitations was compromised by her drug-seeking behavior").

This Magistrate Judge finds the ALJ's credibility determination is supported by substantial evidence and should not be disturbed on appeal.


## 2.      The ALJ's Step Three Determination

Plaintiff next argues that the ALJ erred in his credibility determination with respect to her mental impairments, but her argument actually focuses on the ALJ's step three determination in which he found Plaintiff's impairments did not meet or medically equal a listing (Tr. 28).

To satisfy the "B" criteria of the listings, Plaintiff's mental problems must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or, (4) repeated episodes of decompensation, each of extended duration.

In finding Plaintiff had mild restriction of activities of daily living, the ALJ stated, "[Plaintiff] is able to handle her own personal care. [She can also] focus sufficiently to do activities such as watch[] television[,] . . . complete forms[, and] . . . do some cooking" (Tr. 28-29).  In finding Plaintiff had moderate difficulty in maintaining social functioning, the ALJ stated, "[Plaintiff] reported that she does not go out and visit friends because of her impairments[, but] . . . she gets along with family" (Tr. 29).   Plaintiff argues that she has: (1) marked difficulty in maintaining social functioning because she has disputes with her brother-in-law and slaps her mother; and, (2) marked restriction of activities of daily living because she does not watch television, has a hard time concentrating, and "cooking 1-2 simple meals a week is not as relevant as having to rely on her sister to do the housework, the laundry, the shopping, the driving, and the rest of the cooking" (Dkt. No. 10 at p. 14 (CM/ECF)).

Assuming that Plaintiff had marked restriction of activities of daily living, the evidence does not support a finding that she had marked difficulty in maintaining social functioning. Plaintiff "may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." 20 C.F.R. Part 404, Subpart P, Appendix 1.  A marked difficulty in maintaining social functioning is characterized by "the nature and overall degree of interference with function."  *Id.*   While Plaintiff had problems with her brother-in-law (Tr. 332) – consistent with the ALJ's findings – Plaintiff testified that she got along with her family, despite losing her temper with them a few times a week (Tr. 63, 68).  The fact that Plaintiff had problems with family members – on an inconsistent basis – does not lead to the conclusion that she had more than moderate difficulty in maintaining social functioning.[10]

---

[10]Plaintiff reported that she sometimes slapped her mother (Tr. 331).

Absent a finding that Plaintiff's mental problems satisfied at least *two* of the "B" criteria, the ALJ's determination should not be disturbed on appeal. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("[w]hen 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game'").

### 3.    Moderate Limitation in Concentration, Persistence, or Pace

Plaintiff's final argument is that the ALJ erred when he did not include in the RFC determination Plaintiff's moderate difficulties in her ability to maintain concentration, persistence, or pace.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). There is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace, and only limits the hypothetical individual to unskilled work or simple, routine tasks.[11]   However, there is also authority that has found an ALJ formed an accurate

_____

[11]*See e.g., Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations"); *Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only limitations were with co-workers and the public, and to "unskilled, light jobs." These parameters are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE. Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an unskilled job" (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09-14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did

-13-

hypothetical by limiting the claimant to unskilled work and omitting a moderate concentration or pace limitation.[12]  In analyzing the case law, this Magistrate Judge agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitations in concentration, persistence or pace because the difficulty of a task does not always equate with the difficulty of staying on task.  *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.  Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient"); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

_____

not incorporate [that] limitation . . . into the controlling hypothetical. This was error." (internal citations omitted)); *Perkins v. Comm'r of Soc. Sec.*, No. 10-10089, 2010 WL 5634379, at *9 (E.D. Mich. Dec. 14, 2010) (same).

[12]*See e.g., Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at **7-8 (E.D. Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of 'moderate' limitations . . . are not incompatible "); *Latare v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 WL 1044836, at *3 (E.D. Mich. April 20, 2009) ("The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace").

-14-

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled, routine work" but excludes a moderate limitation in concentration.  Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC.  *Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace").  In a similar case, this evaluative process was explained as follows:

> Taken in isolation, the hypothetical limitations consisting of '[s]imple routine tasks in a low stress environment' and 'minimal changes in the work place setting' might appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.

*Hess*, 2008 WL 2478325, at *7; *see also Lewicki*, 2010 WL 3905375, at *3.

In *Hess*, the state agency doctor found that the claimant suffered moderate limitations in concentration, persistence and pace, such that the claimant had limitations in performing at a consistent pace.  *Hess*, 2008 WL 2478325, at *7.  However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis.  *Id.* at *4.  The court in *Hess* concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical.  *Id.* at *8.

-15-

In this case, the ALJ's determination that Plaintiff can perform "simple, routine and repetitive work" accurately reflects Virginia Sparkman, LMSW's opinion that, while Plaintiff had bipolar disorder and a GAF score of 50 (Tr. 339),[13] her memory, orientation, stream of thought, perception, and consciousness were normal; general knowledge was above average; and, insight and judgment were good (Tr. 338).  As in *Hess* and *Lewicki*, the ALJ's finding of a moderate limitation in concentration, persistence or pace has to be considered in conjunction with the psychiatrist's broader findings, which suggest that Plaintiff could successfully perform simple occupational tasks.  As such, the ALJ's RFC determination adequately accounted for Plaintiff's limitations in concentration, persistence and pace, and it should not be disturbed on appeal.

The fact that Plaintiff's GAF scores ranged from 50-55 (Dkt. No. 10 at p. 15 (CM/ECF)), does not alter the conclusion that the ALJ's RFC determination is supported by substantial evidence.  *See Kornecky*, 167 F. App'x at 511(an ALJ need not "put stock in a GAF score[.]").

## IV.   CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the

--------

[13]The GAF score is

a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.

*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon_____
Mark A. Randon
United States Magistrate Judge

Dated:  October 28, 2013

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 28, 2013, by electronic and/or ordinary mail.

s/Eddrey Butts_____
Case Manager for Magistrate Judge Mark A. Randon